Filed 9/15/16  P. v. Perez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>AGUSTIN PEREZ,<br><br>    Defendant and Appellant. | B263400<br><br>(Los Angeles County<br>Super. Ct. No. KA104290)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:*

It is ordered that the opinion filed herein on September 1, 2016, be modified as follows:

1.  On page 5, the first paragraph under subheading A, line 10, the following sentence is inserted after the sentence ending in "investigation.":

> Although defendant attacks "the entirety" of Detective Jara's testimony, the admissibility of evidence turns on specifics, not aggregate generalities.

2.  On page 17, subheading B, the words "Gang enhancement" are deleted and the words "Rebuttal testimony" are inserted in their place so that the subheading reads:

> ***B.    Rebuttal testimony***

---

\*      BOREN, P. J.,        CHAVEZ, J.,        HOFFSTADT, J.

3.  On page 19, the first paragraph, line 3, the following sentence is inserted after the sentence ending in "later.":

> There is also nothing to suggest that evidence that unrelated gang members murdered women in unrelated cases in any way affected the jury's deliberations or undermined the otherwise overwhelming evidence of defendant's involvement in the charged crimes.

4.  On page 21, the first paragraph, in the sentence beginning "In this case," the words "the jury unanimously found" are deleted and the words "each juror was required to find" are inserted in their place; and the word "unanimous" is inserted between the words "jury's" and "findings" so that the sentence reads:

> In this case, each juror was required to find that defendant committed at least one overt act in support of the conspiracy to dissuade a witness; because each overt act alleged in the conspiracy count went "beyond mere preparation" and accomplished """some appreciable fragment of the crime""" (*Foster*, at p. 336), the jury's unanimous findings on the conspiracy count render harmless beyond a reasonable doubt any instructional error on the attempted dissuasion count.

5.  On page 21, the first full paragraph, line 13, footnote 5 is inserted after the sentence ending in "exhibit."  This will require renumbering of all subsequent footnotes.  The text of footnote 5 should read:

> Defendant makes the related argument that this testimony prejudicially cast Yorba, Martinez, defendant and his trial counsel in a negative light.  We disagree for two reasons:  (1) the evidence at trial only referred to *prior* counsel's involvement, not *current* counsel's; and (2) the other evidence at trial overwhelmingly tied Yorba, Martinez and defendant to the conspiracy and attempted dissuasion counts.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

Filed 9/1/16  P. v. Perez CA2/2 (unmodified version)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> AGUSTIN PEREZ, <br><br>     Defendant and Appellant. | B263400 <br><br> (Los Angeles County <br> Super. Ct. No. KA104290) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Juan Carlos Dominguez, Judge.  Affirmed and remanded for resentencing.

Maureen L. Fox, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, Nathan Guttman and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

Agustin Perez (defendant) assaulted a woman who refused to tell him where someone he believed to be a rival gang member was located, vandalized the rival gang member's car with gang-related graffiti, and from jail directed two other people to track down and intimidate both victims. A jury convicted him of charges related to all three incidents, and he was sentenced to prison for 56 years, four months to life. On appeal, defendant raises a number of challenges to his convictions and to his sentence. We affirm his convictions, but vacate his sentence and remand for resentencing.

## FACTS AND PROCEDURAL BACKGROUND

### I.      Facts

#### A.      *Robbery and assault*

In December 2013, a woman and a man wearing a mask approached Angela Rodriguez (Rodriguez) and Santiago Grajeda (Grajeda) while they were in the backyard of Rodriguez's friend's house. The masked man stated, "This is Bassett Grande," which is the name of a local gang; the man also asked whether Rodriguez or Grajeda had any gang affiliation. Rodriguez gave her true name, and said she did not "bang." Grajeda did not give his real name, and did not admit that he was a member of Bassett Grande's rival gang, the Desmadres. Both the woman and the masked man left, and Grajeda fled into the house. The woman returned a few minutes later to say that "Pelon" was on his way. Defendant is a Bassett Grande gang member who uses the moniker "Pelon."

A few minutes later, the masked man returned to the backyard with defendant. Defendant was carrying a semiautomatic gun in his hand. He asked Rodriguez where Grajeda was. She said she did not know. Defendant then demanded her cell phone, and she refused. The masked man kicked her until she fell to the ground, and defendant grabbed her cell phone and proceeded to pistol whip her on the head until she lost consciousness. As a result of this beating, Rodriguez had a broken ankle, lacerations to her ear and cheek, and swelling in her head; she suffered temporary hearing loss and permanent damage to her long-term memory.

### B. *Vandalism*

Just hours after assaulting Rodriguez, defendant returned to Rodriguez's friend's house and vandalized Grajeda's car, which was parked in the driveway. On the exterior of the car, defendant used a small knife to etch the letters "B" and G" (the initials for Bassett Grande), the name "Belon" (defendant's moniker with a "B" instead of a "P"), and the words "pussy" and "ran like a bitch." Defendant also slashed the car's tires and the interior seats. The damage to the car exceeded $400.

### C. *Witness intimidation*

In January and February 2014, while defendant was in jail, he made 136 calls to Jessica Yorba (Yorba), Josephine Martinez (Martinez) and others. During those calls, defendant directed various people to track down Rodriguez's and Grajeda's addresses, to "get ahold of" and "talk to" Rodriguez, and to give Desmadres gang members the police reports detailing Grajeda's cooperation with police (which would prompt those gang members to retaliate against Grajeda).

## II. Procedural History

In the operative, first amended information, the People charged defendant with six felonies. For the assault on Rodriguez, the People charged defendant with (1) robbery (Pen. Code, § 211),[1] (2) assault with a semiautomatic firearm (§ 245, subd. (b)), and (3) assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4)). For damaging Grajeda's car, the People charged defendant with vandalism (§ 594, subd. (a)(4)). And for the jailhouse calls, the People charged defendant with (1) conspiring to attempt to dissuade a witness (§ 182, subd. (a)(1)), and (2) attempting to dissuade a witness with malice and in furtherance of a conspiracy (§ 136.1, subd. (c)(2)).[2]

As to the crimes against Rodriguez, the People alleged that defendant personally

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Yorba and Martinez were also charged in these two counts, as well as for possessing a controlled substance (Health & Saf. Code, § 11378).

used a semiautomatic firearm (§ 12022.53, subd. (b)) and that he personally inflicted great bodily injury (§ 12022.7, subd. (a)). As to all of the crimes, the People alleged that they were committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)). The People further alleged that defendant's 1993 conviction for attempted murder was a "strike" within the meaning of our Three Strikes law (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)) and a prior "serious" felony (§ 667, subd. (a)(1)), and that defendant had served prior prison terms (§ 667.5, subd. (b)) for the attempted murder conviction, and for each of his 2008 convictions for possessing a firearm (former § 12021, subd. (a)(1)) and possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a)).

A jury convicted defendant of all six counts, and found all offense-related allegations true. In a bifurcated proceeding, the trial court found true the allegations regarding defendant's prior convictions.

The trial court sentenced defendant to prison for a term of 56 years, four months to life. As to the assault on Rodriguez, the court imposed a prison sentence of 40 years on the assault with a semiautomatic firearm count, comprised of a 12-year base sentence (six years, doubled because of defendant's prior strike), plus 20 years (10 years each, for the personal use of the firearm and gang enhancements), plus five years for his prior "serious" felony conviction, plus three years because defendant inflicted great bodily injury. The court imposed but stayed, under section 654, a 34-year prison sentence on the robbery count and a 34-year prison sentence on the assault by means likely to produce great bodily injury count. For the vandalism to Grajeda's car, the court imposed a consecutive prison sentence of two years and four months, comprised of 16 months for the vandalism (which was one-third of the two-year, mid-term sentence, doubled because of defendant's prior strike) plus one year for the gang enhancement (which was one third of the three-year, mid-term sentence). For the witness intimidation crimes, the court imposed a consecutive prison sentence of 14 years to life on the conspiracy count, using a base term of seven years to life under the gang enhancement for a crime involving "threats to victims and witnesses" (§ 186.22, subd. (b)(4)(C)), doubled because of

4

defendant's prior strike. The court imposed but stayed under section 654, a 14-year-to-life prison sentence on the attempted dissuasion count.

Defendant timely appeals.

## DISCUSSION

### I.     Evidentiary Issues

#### A.     *Witness intimidation counts*

The People alleged 10 overt acts in the conspiracy to attempt to dissuade a witness count. The related, attempted dissuasion count seemingly relies on the same overt acts. Eight of the 10 overt acts are based on specific telephone calls between defendant and his alleged coconspirators. At trial, the People did not introduce the tapes or transcripts of the conversations. Instead, for the overt acts involving telephone calls, the prosecutor called the investigating officer, Detective Liliana Jara (Detective Jara), as a witness; asked her to quote verbatim, paraphrase or summarize the relevant calls; and, for certain calls, asked her either to interpret the coded language defendant and his coconspirators were using or to explain the meaning of the calls using her expertise or her knowledge pertaining to her investigation. The following table sets forth the 10 alleged overt acts, how Detective Jara presented the content of the calls, and any additional testimony she offered with respect to each call.

| No. | Alleged Overt Act | Detective Jara's Testimony Regarding The Call's Content | Detective Jara's Additional Testimony |
|-----|-------------------|--------------------------------------------------------|---------------------------------------|
| 1 | Telephone call: Defendant tells Yorba where Grajeda lives and instructs Yorba to have "Junior" contact someone who knows Rodriguez. | (1) Defendant tells Yorba to have "Junior, to work on Selena, Chuca, to take care of that." (2) Defendant says, "[T]ell her this in code . . . The homie Dopey, where he used to live, she'll know on that street. Um, Ernie, Ernie's old neighborhood, the homeboy that lives on that street might be . . . Dude might | (1a) "Selena" was Rodriguez's ex-girlfriend, and Detective Jara knows this (i) because Yorba explained on another call that Yorba had "served time" with Rodriguez and learned that Selena knew where Rodriguez lived (Overt Act 2), and (ii) because of her investigation. (1b) Based on the prior relationship between Selena and Rodriguez, |

| No. | Alleged Overt Act | Detective Jara's Testimony Regarding The Call's Content | Detective Jara's Additional Testimony |
|---|---|---|---|
| | | be saying something. Go talk to him. Um, and to have Ernie go talk to him." | defendant wants Yorba to have Junior talk to Rodriguez. (2) The "[d]ude" that defendant wants Ernie to talk to is Grajeda, and Detective Jara believes this is so because Grajeda is the only male victim in the case. |
| 2 | Telephone call: Yorba tells defendant that she will locate Rodriguez. | Yorba tells defendant, "I know her. She used to call herself my brother[3] . . . I know her really good. She used to be with Selene [sic] . . ." Then defendant says, "Oh, Okay. Selena. Look at, well, look, look, get ahold of her. Tell Junior to get ahold of her. And go talk to her." | In her "opinion," the call reflects Yorba agreeing to locate Rodriguez. |
| 3 | Telephone call: Yorba tells defendant that "Junior" has made contact with a witness. | Defendant is concerned that things are not working out and Yorba tells him, "Junior already went to go to what you told him to do. . . . He went to where you said." | None. |
| 4 | Telephone call: Yorba tells defendant that she has received the names of witnesses from defendant's former defense attorney and is | Defendant asks, "Have you talked to Jose . . . has he read into the report or anything?" Yorba responds, "I am on it." Defendant says, "[T]ell him I want a copy of the report. The | (1) "Jose" was the defendant's former attorney. (2) Yorba knows Rodriguez, and Detective Jara knows this because Yorba admitted to that fact during a post-arrest interview ("because [I] |

---

[3] The record indicates that Rodriguez described herself as "look[ing] like a male."

| No. | Alleged Overt Act | Detective Jara's Testimony Regarding The Call's Content | Detective Jara's Additional Testimony |
|---|---|---|---|
| | trying to find the witnesses. | whole report . . . because there's names on there, you know." Yorba responds, "There's three people on the report . . . [a]nd he already gave me the names, and I have to find out where they're at and stuff." Defendant says, "We'll talk about it when I get out. But, um, your friend is the one that worries me the most." | went to prison with her.") (3) The "friend" defendant is "worrie[d] [] most" about is Rodriguez, and Detective Jara believes this because the charges involving Rodriguez (assault and robbery) carry the heaviest penalty. |
| 5 | Telephone call: "Junior" tells defendant that he received information that Rodriguez was at a certain location, and that he went there, but did not find her. | "Junior" tells defendant that (1) he got a call from "BB" and "Grumps," who said that Rodriguez was at a party, (2) he rushed over to the party, but the lady was not Rodriguez. | "Junior" is Robert Alvarez, a Bassett Grande gang member, which Detective Jara knows because of her investigation. |
| 6 | On January 16, 2014, Yorba received copies of police reports from defendant's former attorney. | Yorba tells defendant on a January 17, 2014 telephone call that she obtained the reports. | None. |
| 7 | Telephone call: Defendant tells Yorba to have Salvador Andrade contact two witnesses and to provide a copy of the police reports to Grajeda's gang associates. | Defendant tells Yorba (1) to "have Sal go visit" "Yolie's daughter Destiny," and (2) to show the "paperwork" to Grajeda's "homies." | (1) Salvador Andrade is one of defendant's fellow gang members. (2) Showing police reports indicating that Grajeda avoided a gang confrontation to Grajeda's fellow gang members will prompt them to discipline Grajeda for his cowardice. |
| 8 | Telephone call: Martinez tells defendant she has obtained contact | Call is summarized as Martinez informing defendant that she sent the items defendant | None. |

7

| No. | Alleged Overt Act | Detective Jara's Testimony Regarding The Call's Content | Detective Jara's Additional Testimony |
|-----|------------------|------------------------------------------------|-----------------------------------|
|  | information for witnesses and given it to defendant's former attorney. | requested to the attorney, including addresses, and is waiting on finding the last person. |  |
| 9 | On February 4, 2014, Martinez and Yorba were in possession of a notebook containing the name and address of Rodriguez. | Detective Jara testified to the seizure of items from a motel room rented by Yorba, and where Yorba, Martinez, Salvadaor Andrade and others were present. | N/A |
| 10 | On February 4, 2014, Martinez and Yorba were in possession of police reports regarding the assault on Rodriguez. | Detective Jara testified to the seizure of items from a motel room rented by Yorba, and where Yorba, Martinez, Salvadore Andrade and others were present. | N/A |

Defendant raises five objections to this evidence.

### 1. *Method of introducing evidence regarding telephone calls*

Defendant argues that the trial court erred in allowing the People to admit evidence regarding the calls through Detective Jara's quoting, paraphrasing or summarizing the calls, rather than by playing the calls themselves while the jury followed along with written transcripts. Specifically, defendant argues that the People's methodology (1) violated California Rules of Court, rule 2.1040(a), (2) violated due process, and (3) violated the secondary evidence rule (Evid. Code, § 1520 et seq.) The first two issues entail questions of law we review de novo (*Sino Century Development Limited v. Farley* (2012) 211 Cal.App.4th 688, 693; *In re J.H.* (2007) 158 Cal.App.4th 174, 183), while the third involves the admission of evidence that we review for an abuse of discretion (*People v. Hovarter* (2008) 44 Cal.4th 983, 1013 (*Hovarter*)).

8

California Rules of Court, rule 2.1040(a)(1) provides, in pertinent part, that "[b]efore a party may present or offer into evidence an electronic sound or sound-and-video recording of deposition or other prior testimony, the party must lodge a transcript of the deposition or prior testimony with the court." The People did not violate this rule because the jailhouse calls are not a "deposition or other prior testimony" and because the People never "present[ed] or offer[ed]" recordings of those calls "into evidence."

b.   *Due process*

As pertinent here, a criminal defendant's constitutional right to due process guarantees that the People must prove every element of any crime beyond a reasonable doubt (*In re Winship* (1970) 397 U.S. 358, 363), and prohibits a court from shifting that burden onto the defendant (e.g., *Sandstrom v. Montana* (1979) 442 U.S. 510, 524). Defendant contends that the People impermissibly shifted the burden of proving the conspiracy and attempted dissuasion counts onto him by (1) not introducing the jailhouse calls themselves, thereby requiring defendant to do so if he wished to impeach Detective Jara's quotation, paraphrasing or summary of those calls, and (2) eliciting from Detective Jara, during her second redirect testimony, that defendant's attorney had been given tapes of the jailhouse calls and could have played them for the jury. Neither of defendant's contentions has merit.

As to defendant's first contention, the trial court instructed the jury that the People had to prove every element of the conspiracy and attempted dissuasion counts beyond a reasonable doubt, and the People introduced Detective Jara's testimony to prove those crimes rather than playing all or some of the 136 jailhouse calls. What is more, the People disclosed the recordings of all 136 calls to the defense, along with reports containing Detective Jara's transcriptions for five of the eight calls alleged as overt acts. Because defendant has offered no authority for the proposition that due process compels the People to prove their allegations with any particular evidence or in any particular manner, the People's decision to use Detective Jara's testimony rather than playing the

9

tapes did not offend due process.

As to defendant's second contention, the People elicited testimony regarding defense counsel's possession of the jailhouse call tapes and his ability to play them for the jury if he so chose. This did not violate due process. Prosecutors may "comment[] . . . upon the failure of the defense to introduce material evidence or to call anticipated witnesses" (*People v. Bradford* (1997) 15 Cal.4th 1229, 1339), and "such commentary does not ordinarily . . . imply that the defendant bears a burden of proof" (*People v. Lewis* (2004) 117 Cal.App.4th 246, 257). Further, the testimony defendant now attacks as improper was elicited only after defendant questioned Detective Jara about why she did not fully transcribe all of the calls in her reports.

c.      *Secondary evidence rule*

The secondary evidence rule generally provides that "oral testimony is not admissible to prove the content of a writing" (Evid. Code, § 1523, subd. (a)), and a "writing" includes "every other means of recording . . . any form of communication . . . , including . . . sounds" (Evid. Code, § 250). Defendant argues that Detective Jara's quoting, paraphrasing or summarizing of the jailhouse calls offends this rule. Defendant has forfeited this argument because he did not object to the tapes on this basis before the trial court (Evid. Code, § 353), and did not raise this argument on appeal until his reply brief (*People v. Rangel* (2016) 62 Cal.4th 1192, 1218-1219 ["'arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party'"]). Defendant's argument is without merit in any event. The rule prohibiting oral testimony does not apply "if the writing consists of numerous accounts or other writings that cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole." (Evid. Code, § 1523, subd. (d).) Here, the prosecutor informed the trial court that playing each of the jailhouse tapes would add days to the length of the trial, and defendant's criminal liability on both the conspiracy and attempted dissuasion counts turned on the *totality* of his conduct and not any individual call. Moreover, because defendant's appeal focuses chiefly on Detective Jara's testimony *explaining* the jailhouse calls rather than challenges to the accuracy of

10

her testimony *quoting, paraphrasing or summarizing* the calls, he has made no showing that a different result is reasonably probable had the tapes themselves been played for the jury. (*People v. Watson* (1956) 46 Cal.2d 818, 836-837.)

### 2. *Detective Jara's testimony as an expert witness*

Defendant next asserts that the trial court erred in allowing Detective Jara to offer her opinion on the meaning of jailhouse calls and on the conduct of gang members generally because she was not an expert witness and because her testimony was in any event "unnecessary" because "the jury could have drawn its own inferences and conclusions" about the calls. We review challenges to expert testimony for an abuse of discretion. (*People v. Montes* (2014) 58 Cal.4th 809, 861.)

To begin, we reject defendant's assertion that Detective Jara did not testify in part as an expert witness. Although at times she testified as a lay witness to matters she personally perceived (Evid. Code, § 800), she also offered opinions on matters not personally perceived by her on a variety of topics, including how and why gang members declare their gang affiliation, how gangs do not allow non-members to claim gang membership or permit their members to have the same moniker, how gang members are expected to "stand up" to and confront members of a rival gang, how gangs will beat up their own members who cooperate with police, that "paperwork" refers to police reports and the like, and that various terms used on the jailhouse calls had certain meanings. These are topics reserved for expert witnesses. (E.g., *People v. Gonzalez* (2006) 38 Cal.4th 932, 945-946 [gang expert testimony on gang culture].) Indeed, defendant also treated Detective Jara as an expert, asking her to explain gang culture and define gang terminology, and once going so far as to ask her a hypothetical question.

Further, the trial court did not abuse its discretion in concluding that Detective Jara's expert testimony on these matters was appropriate. A expert may offer her opinion if: (1) she "has special knowledge, skill, experience, training, or education sufficient to qualify [her] as an expert on the subject to which [her] testimony relates" (Evid. Code, § 720, subd. (a)); (2) her opinion is "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact"

11

(Evid. Code, § 801, subd. (a)); and (3) her opinion is "[b]ased on matter . . . perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which [her] testimony relates" (*id.*, subd. (b)).  Detective Jara testified that she spent years investigating gang crimes, and this experience qualified her to offer testimony on gang culture.  Courts have repeatedly held that the elements of gang culture, including the slang they use, are beyond the ken of most jurors and thus an appropriate topic for expert testimony.  (*People v. Lindberg* (2008) 45 Cal.4th 1, 46-47 [gang terminology]; *People v. Champion* (1995) 9 Cal.4th 879, 924-925 [same]; see generally *People v. Albillar* (2010) 51 Cal.4th 47, 60-64, 68 [gang culture generally].)  Indeed, defendant himself seems to acknowledge the need for expert testimony when he elsewhere characterizes the jailhouse calls as "enigmatic" and "ambiguous" due to their "vague, cryptic statements."

### 3. *Hearsay and confrontation clause*

Defendant also asserts that Jara's testimony regarding the content of the jailhouse calls as well as her additional testimony interpreting or explaining those calls violated the hearsay rule or the confrontation clause.  As noted above, we review evidentiary questions for an abuse of discretion (*Hovarter*, *supra*, 44 Cal.4th at p. 1013); we independently review the application of the confrontation clause to the facts in a particular case (*People v. Giron-Chamul* (2016) 245 Cal.App.4th 932, 964).

The hearsay rule declares inadmissible any statement made out-of-court if that statement is offered for its truth.  (Evid. Code, § 1200, subds. (a) & (b).)  Since *Crawford v. Washington* (2004) 541 U.S. 36, 68-69 (2004) (*Crawford*), the confrontation clause has rendered inadmissible any out-of-court statement that is "testimonial" within the meaning of *Crawford* unless the person who made that statement is available for cross-examination at trial or was available for cross-examination at a prior proceeding.

### a. *Jailhouse calls*

Defendant argues that the trial court violated the hearsay rule in allowing Detective Jara to testify about the content of the jailhouse calls because the statements of

12

defendant, Yorba, Martinez and others contained on those tapes do not fit within the coconspirator exception to the hearsay rule. The coconspirator exception empowers a court to admit an out-of-court statement for its truth if: (1) "[t]he statement was made . . . while participating in a conspiracy to commit a crime . . . and in furtherance of the objective of that conspiracy"; (2) "[t]he statement was made prior to or during the time that the party was participating in that conspiracy"; and (3) there is "independent evidence" of the conspiracy aside from the out-of-court statement itself. (Evid. Code, § 1223; *In re Hardy* (2007) 41 Cal.4th 977, 995-996.) These requirements are met here. All of the statements on the jailhouse calls are between charged and uncharged coconspirators, and involve tracking down and speaking to the victims of defendant's earlier crimes; the statements all occurred while the conspiracy was ongoing; and the prosecutor adduced sufficient evidence of the conspiracy's existence apart from the calls when he introduced evidence that Yorba, Martinez and Salvador Andrade (whom the calls indicate was enlisted in the effort to dissuade witnesses) were arrested in a hotel room with the police reports from defendant's case, a notebook containing Rodriguez's address, and multiple firearms.

### b. Detective Jara's additional testimony

Defendant next argues that Detective Jara's additional testimony contained in the far right column of the table (*ante*, at pp. 6-9), is both inadmissible hearsay and is based upon inadmissible, "testimonial" statements under *Crawford*.

Until recently, an expert could testify about out-of-court statements that formed the basis for her opinion, even if the statements would have otherwise been inadmissible under the hearsay rule. (E.g., *People v. Gardeley* (1996) 14 Cal.4th 605, 618-620.) These earlier cases rested on the notion that the out-of-court statements were not being admitted for their truth, but instead for their effect on the hearer (namely, the expert). (*People v. Montiel* (1993) 5 Cal.4th 877, 919 ["matters admitted through an expert go only to the basis of his opinion and should not be considered for their truth."].)

However, in *People v. Sanchez* (2016) 63 Cal.4th 665, 678 (*Sanchez*), our Supreme Court overruled this earlier precedent and reinstituted a distinction earlier cases

13

had "blurred."  Under *Sanchez,* an expert witness may testify about "background information regarding [her] knowledge and expertise" as well as "premises generally accepted in [her] field," even if that knowledge, expertise, or premises are based on what the expert has learned from out-of-court statements.  (*Id.* at p. 685; see also *id.* at pp. 676, 684.)  However, an expert may no longer testify to "case-specific out-of-court statements to explain the bases for [her] opinion" unless they fit within an exception to the hearsay rule; the relevance of the expert's opinion hinges on the truth of such statements, the court reasoned, so they are "necessarily considered by the jury for their truth."  (*Id.* at pp. 684, 686.)  What is more, because a statement may be "testimonial" within the meaning of *Crawford* if it is admitted for its truth (*Crawford*, *supra*, 541 U.S. at p. 59, fn. 9), *Sanchez'*s new rule means that courts must also analyze an expert witness's testimony relaying "case-specific out-of-court statements" to assess its compliance with both the hearsay rule and with *Crawford*.  (*Sanchez*, at pp. 686-687.)

The additional testimony Detective Jara offered in interpreting or explaining the jailhouse calls falls into four general categories, and we will assess the propriety of each separately.

First, at least one of Detective Jara's explanations relied upon "background information" or other "general knowledge in [her] field of expertise" falling outside of *Sanchez'*s rule and which is still not deemed to be admitted for its truth.  This testimony consequently presents no hearsay or *Crawford* issues.  (*Sanchez*, *supra*, 63 Cal.4th at p. 676.)  Sanchez's testimony about the effect of giving "paperwork" about Grajeda's cooperation to Grajeda's fellow gang members falls into this category.

Second, Detective Jara offered testimony that constitutes her opinion as to the meaning of certain statements.  *Sanchez* held that "[a]n expert is . . . allowed to give an opinion about what [case-specific] facts may mean" in order to "help jurors understand the significance of those [] facts" as long as those facts are properly admitted through other evidence.  (*Sanchez*, *supra*, 63 Cal.4th at p. 676.)  Thus, *Sanchez* does not bar Detective Jara from testifying to her opinion that the "dude" referred to in Overt Act 1 was Grajeda, her opinion that defendant was trying to get Yorba to have "Junior" speak

14

with Rodriguez in Overt Act 1, her opinion that Yorba in the call underlying Overt Act 2 was agreeing to meet Rodriguez, or her opinion that the "friend" defendant was most worried about in Overt Act 4 was Rodriguez. That is because those opinions were based upon the language in the calls themselves, her personal knowledge about the investigation, and/or her opinion. (*Sanchez*, at p. 31 [an "expert's own knowledge and investigation" are "admissible as personal knowledge"].) Those opinions were not based on and did not relay any case-specific, out-of-court statements made by others, and thus present no hearsay or *Crawford* issues. Further, the trial court instructed the jury that it could accept or reject an expert's opinion.

Third, Detective Jara on a few occasions testified to facts based on case-specific, out-of-court statements, but those statements were properly admitted elsewhere. Detective Jara testified that "Selena" was Rodriguez's ex-girlfriend and that Yorba and Rodriguez knew each other, but Yorba admitted both of these facts in the call underlying Overt Act 2. Because Overt Act 2 involved a call between coconspirators, Yorba's statements on that call fall within the coconspirator exception to the hearsay rule and are not "testimonial" under *Crawford*. (*People v. Blacksher* (2011) 52 Cal.4th 769, 816-817 [out-of-court statements not "testimonial" if not made to "law enforcement" or otherwise "to create an out-of-court substitute for trial testimony"].) Detective Jara's testimony that she also learned of Yorba's contacts with Rodriguez through Yorba's post-arrest statement accordingly is of no consequence.

Lastly, Detective Jara testified to several case-specific facts that may have been based on her personal knowledge or based on case-specific, out-of-court statements— namely, that "Jose" was defendant's former attorney (in Overt Act 4), that "Junior" is Bassett Grande gang member Robert Alvarez (in Overt Act 5), that Salvador Andrade is a Bassett Grande gang member (in Overt Act 7), that statements on jailhouse calls not alleged as overt acts had particular meanings, and that Grajeda belonged to the rival Desmadres gang. We need not decide whether introduction of this additional testimony violated the hearsay rule or *Crawford* because any error was harmless beyond a reasonable doubt. (*People v. Trujeque* (2015) 61 Cal.4th 227, 275 [*Crawford* error

15

assessed to see whether it is harmless beyond a reasonable doubt]; *People v. Seumanu* (2015) 61 Cal.4th 1293, 1308 [error under hearsay rule assessed to see whether there is a reasonable probability of a different result].)  The admission of evidence regarding the identities of Jose and "Junior" as well as Salvador Andrade's gang affiliation are harmless beyond a reasonable doubt because what matters to the charged offenses was defendant's efforts to locate and persuade the victims of his crimes, not the real names or affiliations of the people he used to do it.  The admission of Detective Jara's interpretations of statements made on other calls are harmless for the same reason; those calls were not charged as overt acts and were not necessary to explain the charged overt acts.  Grajeda's actual gang affiliation is also irrelevant; what matters for purposes of the charged offenses is whether defendant *believed* Grajeda belonged to a rival gang, and his acts in vandalizing Grajeda's car and in asking Yorba to see that "paperwork" with Grajeda's name was given to Grajeda's "homies" (in Overt Act 7) overwhelmingly establish defendant's belief.

### 4. *Usurping the jury's function*

Defendant contends that the trial court erred in admitting Detective Jara's additional testimony because that testimony usurped the jury's function.  Experts may offer opinions that "embrace[] the ultimate issue to be decided" (Evid. Code, § 805), but may not "express[] a general belief as to how the jury should decide the case" (*People v. Lowe* (2012) 211 Cal.App.4th 678, 684).  If they do the latter, they have impermissibly "invade[d] the province of the jury to decide a case." (*Ibid.*)  Detective Jara's additional testimony did not cross this line.  Defendant focuses on that portion of Detective Jara's testimony where she provided her opinion as to what she believed participants on three of the calls really meant when they intentionally used coded language.  But her opinion did not "express a general belief as to how the jury should decide the case"; rather, she provided her opinion as to what the parties to the call meant when their words were placed in the broader context of what she had learned from her investigation.  Contrary to what defendant asserts in his brief, defendant could have proffered a contrary explanation either by choosing to testify himself or by calling an expert witness of his own.

16

Defendant cites two federal Second Circuit cases barring expert witnesses from testifying to the "'meaning of conversations in general, beyond the interpretation of code words.' [Citation.]" (*United States v. Mejia* (2d Cir. 2008) 545 F.3d 179, 192-193; *United States v. Dukagjini* (2d Cir. 2002) 326 F.3d 45, 54.) These cases are irrelevant because California allows experts to "give an opinion about what [case-specific] facts may mean." (*Sanchez, supra*, 63 Cal.4th at p. 676.)

### 5. *Sufficiency of the evidence*

Defendant contends that the conspiracy and attempted dissuasion convictions are not supported by substantial evidence if the jailhouse calls or Detective Jara's additional testimony regarding those calls are excluded. Because we have concluded that both the calls and Detective Jara's additional testimony were either properly admitted or that their erroneous admission was harmless beyond a reasonable doubt, we necessarily reject defendant's related sufficiency-of-the-evidence challenge.

### B. *Gang enhancement*

As part of their case-in-chief, the People called a gang expert who testified that defendant's assault on Rodriguez, his vandalism to Grajeda's car, and his conspiracy and attempts to dissuade Rodriguez and Grajeda from testifying were for the benefit of, at the direction of, or in association with the Bassett Grande gang. Defendant called his own gang expert, who testified that an assault upon a woman could "never" benefit a gang because gangs categorically condemn "violence against women and children." In rebuttal, the People called a Los Angeles County prosecutor who testified that he had prosecuted two cases in which the People's theory was that gang members had murdered a woman to benefit the gang. The prosecutor did not testify to the jury's verdicts in those cases during his direct testimony, but he testified to the resulting guilty verdicts during cross-examination.

Defendant argues that the trial court erred in allowing the prosecutor to testify (1) under Evidence Code section 352, and (2) under *Crawford, supra*, 541 U.S. 36. As noted above, we review the first question for an abuse of discretion and the second de novo.

17

We agree with defendant that the trial court may have erred in admitting the testimony. On direct examination, the prosecutor testified solely about his prosecutorial theory in the two prior cases. In so doing, he was testifying as a lay witness to that theory based on his personal knowledge, and in that respect, did not run afoul of *Crawford* as recently interpreted in *Sanchez*, because he was not testifying to any "case-specific, out-of-court statements." However, the simple fact that the gang members in the prior cases were *alleged* to have murdered women to benefit their gangs does not rebut the defense's expert witness's testimony that gang members do not harm women; the defense expert's testimony is rebutted only if the allegations in the prior cases are true and only if those gang members did, in fact, murder women to benefit their gangs. Because the allegations themselves had little or no probative value, the court likely abused its discretion in admitting the prosecutor's testimony under section 352. (Evid. Code, § 352 [requiring court to exclude evidence when its "probative value" is "substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury"].) However, the prosecutor's testimony on direct examination became relevant once the prosecutor, during cross-examination, testified that the juries in those two cases returned guilty verdicts; those verdicts established the truth of the allegations in the prior cases that gang members had assaulted women. The verdicts themselves are ostensibly the case-specific, out-of-court statements of the juries. (*Sanchez*, *supra*, 63 Cal.4th at p. 684.)

However, we need not decide whether the elicitation of the juries' verdicts on cross-examination violated *Sanchez* or if their elicitation in response to questions from defense counsel amounts to ineffective assistance of counsel. (See *People v. Harrison* (2005) 35 Cal.4th 208, 235.) That is because the admission of the prior juries' verdicts, and, indeed, the prosecutor's testimony as a whole, was harmless beyond a reasonable doubt. The evidence that the assault on Rodriguez was gang related is overwhelming: The masked man told Rodriguez, "This is Bassett Grande" and asked for her gang affiliation; the woman with him told her defendant was coming and referred to him by his

gang moniker; defendant arrived a few minutes later and did not beat Rodriguez until she refused to disclose Grajeda's whereabouts; and defendant etched gang-related graffiti on Grajeda's car just hours later. Consequently, even if defense counsel had provided deficient performance, it is not reasonably probable that admission of this evidence would have lead to a different outcome and any claim of ineffective assistance is without merit. (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)

## II.     Instructional Errors

We review jury instructions de novo. (*People v. Vega* (2015) 236 Cal.App.4th 484, 495.)

### A.     *Attempted dissuasion jury instructions*

If a person "[k]nowingly and maliciously attempts to prevent or dissuade a witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law," he is guilty of a misdemeanor. (§ 136.1, subd. (a)(2).) If he does so "knowingly and maliciously" and "in furtherance of a conspiracy," he is guilty of a felony. (*Id.*, subd. (c)(2).) To be convicted of this felony, the People must prove that (1) the defendant tried to prevent or discourage a victim or witness from attending or giving testimony at a trial, proceeding, or inquiry, (2) the defendant acted maliciously, and (3) the defendant acted with the intent to assist a conspiracy to intimidate the victim or witness. (CALCRIM Nos. 2622, 2623; accord, *Harris v. Garcia* (N.D.Cal. 2010) 734 F.Supp.2d 973, 1004.) Defendant contends that the trial court's jury instructions on this offense suffer from two defects.[4]

First, defendant asserts that the trial court erred in not giving a unanimity instruction. Where a defendant commits several acts, each of which might constitute a discrete crime, a trial court is required to instruct the jury that it must unanimously agree on which of the defendant's acts constitute the crime, even if a unanimity instruction is not requested. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 569.) However, this

---

[4]     Defendant also argues that the trial court incorrectly referred to the attempted dissuasion count as a "conspiracy" count. This mistake had no impact on the jury's verdict, and thus provides no basis for disturbing its verdict.

19

requirement of jury unanimity does not apply to the legal basis or theory upon which the defendant is found guilty. (*People v. Morelos* (2008) 168 Cal.App.4th 758, 765-766; *People v. Griffin* (2001) 90 Cal.App.4th 741, 750 ["jurors are not required to unanimously agree upon the *mode* of commission"].) Thus, whether some jurors thought that a defendant tried to "prevent" a witness from testifying, while others thought he tried to "dissuade" them, is of no consequence. The unanimity requirement also does not apply to crimes that "contemplate[] a continuous course of conduct of a series of acts over a period of time" rather than a discrete act. (*People v. Thompson* (1984) 160 Cal.App.3d 220, 224.) Section 136.1 is just such a crime because, as the Court of Appeal held in *People v. Salvato* (1991) 234 Cal.App.3d 872, 883, its essence is "the cumulative outcome of any number of acts." Defendant nonetheless contends that the jury should have been instructed to agree unanimously upon which victim—Rodriguez or Grajeda—he attempted to dissuade as part of a conspiracy. We disagree. If a jury need not unanimously agree on which specific acts the defendant commits, it need not unanimously agree against whom those specific acts were committed. This is particularly poignant for the crime of *attempted* dissuasion, where what matters is the defendant's efforts rather than his success as to any particular victim.

Second, defendant argues that attempted dissuasion is, at bottom, an "attempt" crime and that the trial court was accordingly obligated to instruct the jury on the general principles of attempt crimes, including the requirement that he committed """"an act that [went] beyond mere preparation."""" (*People v. Foster* (2007) 155 Cal.App.4th 331, 335; § 21a ["[a]n attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission"]; CALCRIM No. 460 [requiring "a direct step towards committing the crime"].) A court is required to instruct a jury on general principles of law relevant to the issues raised by the evidence. (*People v. Townsel* (2016) 63 Cal.4th 25, 58 (*Townsel*).) Here, the court instructed the jury that it must find that the defendant "tried to prevent or discourage" a victim or witness from testifying, but did not explicitly state that whatever the defendant did to "try" must go "beyond mere preparation." We need not decide whether the pattern

20

CALCRIM No. 2622 instruction is defective because the omission of this additional explication is harmless beyond a reasonable doubt. (See *Neder v. United States* (1999) 527 U.S. 1, 15-18 [omission of an element of a crime is not structural error, and may be harmless beyond a reasonable doubt].) In this case, the jury unanimously found that defendant committed at least one overt act in support of the conspiracy to dissuade a witness; because each overt act alleged in the conspiracy count went "beyond mere preparation" and accomplished """"some appreciable fragment of the crime""" (*Foster*, at p. 336), the jury's findings on the conspiracy count render harmless beyond a reasonable doubt any instructional error on the attempted dissuasion count.

### B.      Instruction on the requirements of the Criminal Discovery Act

In the midst of Detective Jara's testimony that she seized police reports containing Rodriguez's address from the hotel room where Yorba, Martinez and others were staying, the prosecutor asked the trial court to take judicial notice of section 1054.2. That section is part of the Criminal Discovery Act (§ 1054 et seq.), and specifies who may possess "the address or telephone number of a victim or witness" disclosed to the defense by the prosecution under section 1054.1. The court subsequently informed the jury that section 1054.2 provides that "other than attorneys and investigators, no one else is allowed to have" the "addresses and telephone numbers of victims or witnesses" and that their possession is a "crime." The court then read subdivision (a)(1) of section 1054.2 to the jury. After Detective Jara testified that no one—not even a defense attorney—may lawfully possess a police report containing the victims' or witnesses' unredacted addresses, the court instructed the jury to "disregard[] totally" its earlier "summary of what 1054 is" and ultimately admitted a copy of the entire statute as an exhibit. The court did not instruct the jury on the meaning of section 1054.2.

Defendant argues that the trial court's decision to admit the statute as an exhibit rather than instruct the jury on the statute's meaning contravened the court's duties to instruct on general legal principles (*Townsel*, *supra*, 63 Cal.4th at p. 58) and to decide all questions of law arising during trial (§ 1124). We need not decide whether the court's treatment of the issue was correct because the issue presented by the statute—that is,

21

whether it was lawful or unlawful for Yorba, Martinez and the others to possess the unredacted police reports—is irrelevant.  Their possession of the police report is pertinent to this case only because it is charged as Overt Act 10.  Because an overt act need not involve unlawful or illegal conduct (*People v. Marquez* (1994) 28 Cal.App.4th 1315, 1325-1326 [an overt act "'need not be criminal in itself'"]), the question whether section 1054.2 renders possession of the police report a crime has no impact on this case, and any error is by definition harmless beyond a reasonable doubt.

## III.    Sentencing Errors

### A.    *Duplicative offenses*

Defendant argues that he cannot stand convicted of *both* conspiracy to attempt to dissuade a witness *and* attempted dissuasion of a witness.  This is a question of law, and thus one we review de novo.  (*People v. Walker* (2014) 231 Cal.App.4th 1270, 1275.)

Under California law, "it is generally permissible to *convict* a defendant of multiple charges arising from a single act or course of conduct."  (*People v. Sanders* (2012) 55 Cal.4th 731, 736; § 954.)[5]  The sole exception to this general rule is that a defendant may not stand convicted of both a crime and any of its lesser-included offenses.  (*Ibid.*)  The rationale for this exception is straight-forward:  "Convictions of a greater and a lesser included offense are barred because the defendant cannot commit the greater offense without also committing the lesser.  Conviction on both counts would effectively permit two convictions for the lesser offense.  [Citation.]"  (*People v. Ceja* (2010) 49 Cal.4th 1, 6.)  Where two crimes each have an element the other does not, they are *not* lesser included offenses (e.g., *Rutledge v. United States* (1996) 517 U.S. 292, 297), and the fact that "the same evidence is required to support all elements of both offenses" does not change their relationship (*People v. Robinson* (2016) 63 Cal.4th 200, 207).

Despite their similarities, conspiracy to attempt to dissuade a witness and

---

[5]      Section 654 assures that the defendant is not *punished* multiple times for a single act or course of conduct.

attempted dissuasion with malice and as part of a conspiracy are not lesser-included offenses. The crime of conspiracy requires proof of two specific intents—the "specific intent to agree to commit the target offense, and a specific intent to commit that offense." (*People v. Jurado* (2006) 38 Cal.4th 72, 123.) The crime of attempted dissuasion requires proof that the defendant acted "maliciously"—that is, with the intent to "annoy, harm, or injure someone else in any way, or . . . to interfere in any way with the orderly administration of justice." (CALCRIM No. 2623.) Because each crime has a different and non-overlapping intent requirement, the general rule allowing multiple convictions applies.

### B. *Enhancements for personal use of a firearm*

The trial court added a 10-year enhancement for defendant's personal use of a firearm under section 12022.53, subdivision (b) for both the assault with a semiautomatic firearm count and the assault by means of force likely to cause great bodily injury count. As the People concede, this was error. The 10-year enhancement under section 12022.53, subdivision (b) can only be applied to certain, enumerated offenses. Robbery is one of them; the two assault crimes of which defendant stands convicted are not. (§ 12022.53, subd. (a).) Thus, the enhancement as to both assault counts must be vacated. Upon resentencing, this may shift the principal count from assault with a semiautomatic firearm to robbery.

### C. *Base sentence for conspiracy and attempted dissuasion counts*

The trial court imposed a base sentence of seven years to life for the conspiracy and attempted dissuasion counts, citing section 186.22, subdivision (b)(4)(C). A jury's finding that a gang allegation is true usually results in the imposition of a consecutive sentence of two, three or four years (*id.*, subd. (b)(1)(A)), but the allegation can increase the base sentence to seven years to life if, among other reasons, the underlying felony involves 'threats to victims and witnesses, as defined in Section 136.1" (*id.*, subd. (b)(4)(C)). As the People concede, defendant's conviction under section 136.1 did not involve "threats to victims [or] witnesses." As a result, the court erred in imposing the enhanced base term.

### D.	*Probation report*

The probation report in defendant's case erroneously lists his 1993 conviction for attempted murder as a conviction for murder. As the People concede, this is a mistake and should be corrected on remand. (*In re Candelario* (1970) 3 Cal.3d 702, 705.)[6]

## DISPOSITION

The matter is remanded to the trial court for resentencing consistent with this opinion. The trial court is also directed to correct the probation report to reflect that defendant suffered a 1993 attempted murder conviction in case number KA014509. In all other respects, the judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
HOFFSTADT

We concur:

_____, P. J.
BOREN

_____, J.
CHAVEZ

---

[6]	Because we resolve each of defendant's claims on their merits or determine any error to be harmless, we have no occasion to consider defendant's alternative claims that his trial counsel was constitutionally ineffective for not preserving the claims he raises on appeal.

24